UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JULES BUCKLEY,

Plaintiff,

v.

HIGH DESERT STATE PRISON, et al.,

Defendants.

No. 2:11-cv-01310-KJM-DAD

FINDINGS & RECOMMENDATIONS

Plaintiff is a state prisoner proceeding pro se with a civil rights action seeking relief under 42 U.S.C. § 1983. He alleges that defendant A. E. Ritola violated the Eighth Amendment's prohibition against cruel and unusual punishment by subjecting plaintiff to unconstitutional working conditions and by failing to respond adequately to his need for medical treatment.

This matter is before the court on a motion for summary judgment brought by defendant, pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff has filed an opposition. For the reasons discussed below, the undersigned recommends that defendant's motion for summary judgment be granted in part and denied in part.

I. Background

A. Procedural Background

Plaintiff commenced this action on May 16, 2011. (ECF No. 1.) The court screened plaintiff's initial complaint pursuant to 28 U.S.C. § 1915A(a), and on November 29, 2011, issued

an order dismissing the complaint with leave to amend. (ECF No. 6.) On December 27, 2011, plaintiff filed the operative first amended complaint. (ECF No. 9.) The court screened this complaint, and on October 30, 2012, issued an order permitting its service on defendant Ritola. (ECF No. 11.) Defendant unsuccessfully moved to dismiss the first amended complaint (ECF Nos. 23, 24), and thereafter, on September 9, 2013, filed an answer. (ECF No. 27.) On March 25, 2014, defendant filed the instant motion for summary judgment. (ECF No. 33.) On June 2, 2014, plaintiff filed his opposition. (ECF No. 35.)

Accompanying defendant's summary judgment motion is a document entitled "Defendants' Rand Warning to Plaintiff Regarding Opposing Summary Judgment." (ECF No. 33-3.) It is addressed to plaintiff, and contains a verbatim copy of the model warning from Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), as well as a summation of Local Rule 260. (ECF No. 33-3.) Defendant has also filed a proof of service of this document on plaintiff. (ECF No. 33-4.)

B. Factual Background

In support of her motion, defendant has filed a statement of undisputed facts (ECF No. 33-2), supported by (i) citations to plaintiff's first amended complaint (ECF No. 9) and (ii) the transcript of plaintiff's deposition, which has been lodged in paper form with the court (ECF No. 32). Defendant's evidence establishes the following.[1]

Plaintiff was formerly incarcerated at High Desert State Prison in Susanville, California. (Pl.'s Dep. 10:9-10.) While there, plaintiff was granted permission to work in the vegetable room to assist the prison cook. (Def.'s Separate Statement of Undisputed Facts ("DUF") 1, ECF No. 33-2.) Plaintiff's job description required that he assist the supervising cook with dicing, chopping, and slicing vegetables. (DUF 2.) On plaintiff's first day of work, defendant Ritola showed plaintiff around the vegetable room, and explained how to use knives to chop vegetables,

/////

[1] Plaintiff has not submitted any evidence in opposing the pending motion. Accordingly, in these findings and recommendations the undersigned has relied solely on the evidence cited and/or submitted by defendant.

as well as how to use a different cutting machine than the one on which he would later injure himself. (DUF 3.)

On October 26, 2009, when plaintiff arrived early to work, defendant told him that she needed him to start cutting vegetables. (DUF 4.) Plaintiff believed that defendant wanted him to use a machine that he had never used before to cut up the vegetables because defendant needed the vegetables quickly. (DUF 5.) Defendant had previously instructed plaintiff not to use this machine, and had not trained him in its use. (DUF 6.) Plaintiff attempted to set up the machine without any instruction, and cut his left index finger when he attempted to put a blade on the machine. (DUF 9.) Plaintiff then looked for defendant, who had departed and when he did find her, she gave him two Band-Aids. (DUF 7, 11-13.) Defendant then instructed plaintiff to get back to work, and departed again. (DUF 13, 17.)

Plaintiff returned to the machine, successfully put the blade on it, and began using it to cut vegetables. (DUF 16-18.) The bleeding from his finger had stopped by then. (DUF 15.) In the meantime, other inmates arrived in the kitchen to work. (DUF 18.) Plaintiff, believing that he had figured out how to operate the machine, did not ask any of the other inmates who were present for help. (DUF 19.) However, as plaintiff was putting onions in the machine, he cut the tip of his right finger, an injury more serious than the one he had previously suffered on his left index finger. (DUF 20, 21). Other inmates who were present began searching for defendant. (DUF 20.) When defendant arrived, she filled out paperwork and sent plaintiff to see medical personnel, who treated him. (DUF 23-24.) Plaintiff was then placed on a seven day "lay-in" while his right finger healed. (DUF 27.)

II. Standards

A. Summary Judgment Standard under Rule 56

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Under summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627 F.3d

376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically store information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the nonmoving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325.); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, . . ., is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving

party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." Walls v. Central Costa County Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

B. Standard re: Civil Rights Act pursuant to 42 U.S.C. § 1983

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which

complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Moreover, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

    C. Standard re: Eighth Amendment violation

The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment prohibited by the Eighth Amendment. Whitley v. Albers, 475 U.S. 312, 319 (1986); Ingraham v. Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). In order to prevail on a claim of cruel and unusual punishment, a prisoner must allege and prove that objectively he suffered a sufficiently serious deprivation and that subjectively prison officials acted with deliberate indifference in allowing or causing the deprivation to occur. Wilson v. Seiter, 501 U.S. 294, 298-99 (1991).

III. Analysis

Defendant Ritola moves for summary judgment in her favor on three grounds, arguing that: (i) she did not subject plaintiff to unconstitutional prison working conditions; (ii) her response to plaintiff's need for medical treatment met constitutional muster; and (iii) she is entitled to qualified immunity. Each of these contentions is considered in turn below.

    A. Prison working conditions

Defendant moves for summary judgment in her favor regarding whether she subjected plaintiff to unconstitutional prison working conditions on the date he was injured.

The Eighth Amendment protects prisoners from inhumane conditions of confinement, including in work programs. See Rhodes v. Chapman, 452 U.S. 337, 344-37 (1981). The Ninth Circuit has established the following standard for demonstrating unconstitutional working conditions in the prison context:

> A prisoner claiming an Eighth Amendment violation must show (1) that the deprivation he suffered was "objectively, sufficiently serious;" and (2) that prison officials were deliberately indifferent to his safety in allowing the deprivation to take place. Farmer v. Brennan, 511 U.S. 825, 834 (1994). More specifically, the Eighth Amendment is implicated in the prison work context only when a prisoner employee alleges that a prison official compelled him to "perform physical labor which [was] beyond [his] strength, endanger[ed his life] or health, or cause[d] undue pain." Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994) (per curiam); see also Wallis v. Baldwin, 70 F.3d 1074 (9th Cir. 1995) (analyzing under the Eighth Amendment a prisoner's claim that his health was endangered when he was forced to remove asbestos without protective gear).

Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). Resolution of such a claim requires inquiry into the state of mind of the prison official, who is liable only if they were deliberately indifferent to a substantial risk of serious harm. Farmer, 511 U.S. at 837 (The prison official's state of mind is assessed under a subjective, rather than an objective, standard: "the official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference."); see also Wilson, 501 U.S. at 298–99, 302–03 (the official must actually know of the risk yet fail to take reasonable measures to ensure the prisoner's safety); LeMaire v. Mass, 12 F.3d 1444, (9th Cir. 1993). "If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk." Farmer, 511 U.S. at 834. A "sufficiently culpable state of mind" requires that the conduct involve more than mere negligence. Id. at 837, 847 (nothing less than recklessness in the criminal sense, that is, subjective disregard of a risk of harm of which the actor is actually aware, satisfies the "deliberate indifference" element of an Eighth Amendment claim). If the risk of harm was obvious, however, the trier of fact may infer that a defendant knew of the risk, but obviousness per se will not impart knowledge as a matter of law. Id. at 840–42.

Here, defendant argues that plaintiff has failed to establish a triable issue of material fact regarding her mental state in assigning him to cut vegetables on October 26, 2009. (ECF 33-1 at 5-6.) According to defendant, "[p]laintiff's allegations that he was harmed using kitchen equipment that he was not adequately trained to use amounts to no more than negligence which

fails to rise to the level of an Eighth Amendment violation." (Id. at 6.) In support of this contention, defendant cites her statement of undisputed facts for the propositions that (i) she had previously instructed plaintiff not to use the machine on which he cut himself (DUF 6), and (ii) that plaintiff formed his own belief that defendant nonetheless wanted him to use the machine because she needed the vegetables quickly (DUF 5).

The latter fact is in fact contradicted by plaintiff's deposition testimony in which he stated:

> I said, well, I don't know how to work this machine, you know, I only know how to work that. You told me to start off of this one, so I never know anything about it.
>
> So she was like, I need you to go up there right now and go cut the vegetables. So I said, well, I need whatever I need to go, I need to put something so I can be able to slice it and do whatever I need. **She told me the tools in the room**. So I went to go get the tools and everything else, you know.

(Buckley Dep. 21:5-15) (emphasis added). Plaintiff's deposition testimony that defendant Ritola told him where the tools to use the machine were located creates a triable issue of fact as to whether defendant had drawn the inference that plaintiff was going to use the machine to cut the vegetables, and therefore was deliberately indifferent to the risk that he would harm himself in using the machine upon which he was not trained. See Farmer, 511 U.S. at 837. While plaintiff testified at his deposition that he did not believe defendant Ritola wanted him to injure himself (see DUF 32), the deposition testimony quoted above is sufficient to support an inference that defendant may have nonetheless been subjectively reckless as to the danger of plaintiff harming himself. See Farmer, 511 U.S. at 839-40 (identifying "subjective recklessness" as the applicable standard for deliberate indifference under the Eighth Amendment); see also Walls, 653 F.3d at 966 ("In evaluating the evidence to determine whether there is a genuine issue of fact, we draw all inferences supported by the evidence in favor of the non-moving party."). In short, if plaintiff's deposition testimony is believed, as it must be at the summary judgment stage, this was not an unforeseen or freak accident but rather a supervising prison official directing an inmate worker to use a slicing machine which she knew that he had not been trained to operate and

which she herself had previously directed him not to use, presumably because of the danger posed by such untrained use.

This conclusion is reinforced by defendant's failure to address, in her points and authorities in support of the pending motion for summary judgment, whether she was deliberately indifferent by instructing plaintiff to return to work after he first cut himself. Plaintiff's deposition testimony on this point is telling:

> She give me two Band-aids. She sent me, **get back to the machine or I'll write you up.** That's what she tell me . . . . I tell her I can only do my best. I don't know nothing about the machine **. . . .**
>
> So as I'm trying to do everything, I finally work it, through the grace of God. I learned how to put the blade on. I get the blade on, did everything I need to do. Now . . . I began to start putting the vegetables in there. **She starts telling me, put the vegetables in there**.

(Buckley Dep. 22:4-16) (emphasis added). Thus, plaintiff testified at deposition essentially that defendant Ritola knew he was using the machine upon which he had not been trained, and encouraged him to do so. The court need draw no inference from this testimony; it is sufficient in and of itself to create a triable issue of fact as to whether defendant Ritola acted with deliberate indifference toward plaintiff's safety.

Accordingly, it is recommended that defendant's motion for summary judgment on plaintiff's claim that defendant Ritola subjected him to unconstitutional working conditions be denied.

B. Plaintiff's need for medical care

Defendant Ritola also moves for summary judgment in her favor as to whether she violated the Eighth Amendment in her response to plaintiff's need for medical care after he injured himself.

If a prisoner's Eighth Amendment claim arises in the medical care context, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle, 429 U.S. at 106. An Eighth Amendment medical claim has two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1991), overruled on

other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

A medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin, 974 F.2d at 1059 (quoting Estelle, 429 U.S. at 104). Indications of a serious medical need include "the presence of a medical condition that significantly affects an individual's daily activities." Id. at 1059-60. By establishing the existence of a serious medical need, a prisoner satisfies the objective requirement for proving an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825, 834 (1994).

If a prisoner establishes the existence of a serious medical need, he must then show that prison officials responded to the serious medical need with deliberate indifference. See Farmer, 511 U.S. at 834. In general, deliberate indifference may be shown when prison officials deny, delay, or intentionally interfere with medical treatment, or may be shown by the way in which prison officials provide medical care. Hutchinson v. United States, 838 F.2d 390, 393-94 (9th Cir. 1988). Before it can be said that a prisoner's civil rights have been abridged with regard to medical care, however, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06). See also Toguchi v. Soon Hwang Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) ("Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights."); McGuckin, 974 F.2d at 1059 (same). Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" Farmer, 511 U.S. at 835.

Delays in providing medical care may manifest deliberate indifference. Estelle, 429 U.S. at 104-05. To establish a claim of deliberate indifference arising from delay in providing medical care, a plaintiff must show that the delay was harmful. See Hallett v. Morgan, 296 F.3d 732, 745-46 (9th Cir. 2002); Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994); McGuckin, 974 F.2d at 1059; Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990); Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989); Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404,

407 (9th Cir. 1985). In this regard, "[a] prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).

Finally, mere differences of opinion between a prisoner and prison medical staff or between medical professionals as to the proper course of treatment for a medical condition do not give rise to a § 1983 claim. See Snow v. McDaniel, 681 F.3d 978, 988 (9th Cir. 2012); Toguchi, 391 F.3d at 1058; Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

Defendant Ritola contends that she responded quickly to plaintiff's need for medical treatment on the date in question. Once defendant became aware that plaintiff had first cut himself, she provided him with two Band-aids. (DUF 11-13.) Plaintiff's index finger had stopped bleeding by the time plaintiff resumed cutting vegetables. (DUF 15.) And when defendant Ritola learned that plaintiff had cut one of his fingers a second time, she completed the necessary paperwork and sent plaintiff for medical treatment. (DUF 23-24.) Plaintiff himself testified at his deposition as follows regarding his second injury:

> [T]hat's when she comes back in the door and sees me bleeding real bad. That's when she was like oh my God.
>
> She was scared, nervous, like I was saying. She had to run and hurried to got papers and did what she needed to do, fill out papers and things like that. I told her to give them to me, and I was addressed to go the medical.

(Buckley Dep. 30:20 -31:2.) There is nothing in the evidence presented on summary judgment to suggest that defendant Ritola delayed in providing plaintiff with medical care on either occasion, or was otherwise deliberately indifferent to his medical needs. The providing of two Band-aids by defendant adequately resolved plaintiff's initial injury, and he was promptly sent to receive medical treatment after receiving his second injury.

Because defendant Ritola has established the absence of a triable issue of material fact regarding the nature of her response to plaintiff's medical needs, it is recommended that defendant be granted summary judgment in her favor with respect to plaintiff's claim that defendant failed to adequately respond to his need for medical treatment.

C. Qualified immunity

Finally, defendant Ritola moves for summary judgment in her favor on the grounds that she is entitled to qualified immunity from suit.

Government officials enjoy qualified immunity from civil damages unless their conduct violates clearly established statutory or constitutional rights. Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). When a court is presented with a qualified immunity defense, the central questions for the court are: (1) whether the facts alleged, taken in the light most favorable to the plaintiff, demonstrate that the defendant's conduct violated a statutory or constitutional right; and (2) whether the right at issue was "clearly established." Saucier v. Katz, 533 U.S. 194, 201 (2001).

The Supreme Court has held that "while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory." Pearson v. Callahan, 555 U.S. 223, 236 (2009). If a court decides that plaintiff's allegations do not make out a statutory or constitutional violation, "there is no necessity for further inquiries concerning qualified immunity." Saucier, 533 U.S. at 201. Likewise, if a court determines that the right at issue was not clearly established at the time of the defendant's alleged misconduct, the court may end further inquiries concerning qualified immunity there without determining whether the allegations in fact make out a statutory or constitutional violation. See Pearson, 555 U.S. 236-242.

"A government official's conduct violate[s] clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" Ashcroft v. al-Kidd, 563 U.S.___, ___, 131 S. Ct. 2074, 2083 (2011) (quoting Anderson v. Creighton, 483 U.S. 635 (1987)). In this regard, "existing precedent must have placed the statutory or constitutional question beyond debate." Id. See also Clement v. Gomez, 298 F.3d 898, 906 (9th Cir. 2002) ("The proper inquiry focuses on . . . whether the state of the law [at the relevant time] gave 'fair warning' to the officials that their conduct was unconstitutional.") (quoting Saucier, 533 U.S. at 202). The inquiry must be undertaken in light of the specific context of the particular case. Saucier, 533 U.S. at 201. Because qualified immunity is an affirmative defense, the burden of

proof initially lies with the official asserting the defense.  Harlow, 457 U.S. at 812.

Here, it appears that defendant has failed to meet the burden of establishing that she was entitled to qualified immunity with respect to plaintiff's claim that she exposed him to unconstitutional working conditions.  Defendant nowhere contends in her motion for summary judgment that an inmate's right to working conditions which meet Eighth Amendment standards was not clearly established on the date of the alleged incident.  Rather, she merely argues that plaintiff cannot establish that she violated such a right:

> Here, Plaintiff was hired and trained to slice vegetables in the [High Desert State Prison] kitchen. (Facts 1,3.)  In fact, Plaintiff had performed his duties in the kitchen without incident for three months until the event giving rise to this case. (Fact 1; Pl.'s Deposition, 34:9-12.)  Accordingly, it was reasonable for Defendant Ritola to expect that Plaintiff could successfully slice vegetables without harming himself.  (Facts 1-4.)

(ECF No. 33-1 at 9.)  However, in moving for summary judgment on qualified immunity grounds defendant fails to address plaintiff's deposition testimony discussed above, in which plaintiff testified that she directed him to put vegetables in a machine which he had not been trained to use and on which he had already cut himself that day.  Under the holding in Saucier, 533 U.S. at 201, that testimony must be viewed in the light most favorable to plaintiff.  And when so viewed, it is evident that defendant, who would bear the burden of proving the affirmative defense at trial, has failed to establish the absence of a triable issue of material fact regarding the existence of a violation.  The same conflicting inferences from the evidence that preclude summary judgment on the merits of plaintiff's Eighth Amendment claim also preclude a finding at the summary judgment stage that defendants are entitled to summary judgment on the grounds of qualified immunity.

Accordingly, as to defendant Ritola's contention that she is entitled to qualified immunity, it is recommended that defendant be denied summary judgment on these grounds.

IV. Conclusion

In light of the foregoing, IT IS HEREBY RECOMMENDED that:

1. Defendant's motion for summary judgment (ECF No. 33) be granted in part and denied in part, as follows:

      a. Defendant's motion for summary judgment on plaintiff's claim that he was exposed to unconstitutional prison working conditions be denied;

b. Defendant's motion for summary judgment on plaintiff's claim that defendant was deliberately indifferent to his need for medical care be granted; and

c. Defendant's motion for summary judgment on qualified immunity grounds be denied.

2. This matter be referred back to the undersigned for further proceedings regarding plaintiff's prison working conditions claim.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: November 25, 2014

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:10
buck1310.52.rev